IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DALE PREACHER, | ) |
| Plaintiff | ) Case No. 2:19-cv-1207 |
| vs. | ) CATHY BISSOON |
| | ) UNITED STATES DISTRICT JUDGE |
| | ) RICHARD A. LANZILLO |
| CORRECT CARE SERVICES et al., | ) UNITED STATES MAGISTRATE JUDGE |
| Defendants | ) MEMORANDUM OPINION AND |
| | ) ORDER ON PLAINTIFF'S MOTION TO |
| | ) COMPEL DISCOVERY [ECF NO. 179] |

I. Introduction

Plaintiff John Dale Preacher, an inmate currently incarcerated at the Pennsylvania State Correctional Institution at Greene (SCI-Greene), commenced this § 1983 civil rights action against Correct Care Services (Correct Care) and medical personnel employed by Correct Care as well as numerous individuals employed by the Pennsylvania Department of Corrections at SCI-Greene. Presently, twenty-nine defendants remain as parties to this action: twenty-six individual employees of the DOC (DOC Defendants) and Correct Care and two Correct Care physicians, Dr. Kaufnan and Dr. Kross (collectively, Medical Defendants). Preacher's motion to compel discovery (ECF No. 179) against all Defendants is pending before the Court. For the reasons discussed below, Preacher's motion is GRANTED in part and DENIED in part.

1

II.     Preacher's Claims

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and for good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). Accordingly, before turning to the specific discovery requests at issue, it is appropriate to identify Preacher's claims in this action. This is a challenging task because Preacher's two hundred twenty-six-page Amended Complaint is simultaneously verbose and vague.[1]

The Amended Complaint (ECF No. 119) asserts a multitude of claims against the Defendants, including violations of his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution and state law. Although the Amended Complaint defies ready summarization, it appears to be based primarily upon Preacher's assertions that Defendants have (1) held him "hostage in the Restricted Housing Unit (RHU)" at SCI-Greene and wrongfully continued his status in the Security Threat Group Management Unit (STGMU) and on the Restricted Release List, allegedly in retaliation for filing grievances and lawsuits, (2) denied him necessary medical care for a hand injury and mental health needs, and (3) subjected him to sexual harassment by corrections officers. His theories of liability include retaliation, deliberate indifference to serious medical needs, failure to protect, procedural due process, sexual harassment, conspiracy, and negligence.

The factual narrative upon which Preacher bases his claims begins on December 28, 2016, when Preacher was transferred from the Restricted Housing Unit at SCI-Forest to SCI-Greene. Upon Preacher's arrival at SCI-Greene, the Prison Review Committee advised him that "based upon SCI-Forest's recommendations," he would pose a security risk if housed in the general population

---

[1] Preacher's original Complaint was three hundred ninety-seven-pages in length. ECF No. 1. Both his original Complaint and his Amended Complaint included essentially a log of events peppered with labels such as "harassment," "retaliation," and "abuse" and adjectives such as "fraudulent" and "dishonest."

2

and, therefore, he instead would be housed in the Special Management Unit and may be included on the Restrict Release List (RRL). ECF No. 119, ¶¶24-25. According to Preacher, various Defendants "maliciously and sadistically" informed him that he could only be considered for transfer to the general prison population if he completed a "step-down" program. *Id.* at ¶45. While Preacher was housed in the SMU, he challenged his placement, but various DOC Defendants refused his requests for transfer; other DOC Defendants upheld these determinations after Preacher filed administrative appeals. During this same period, other DOC Defendants allegedly engaged in vaguely described and frequently unspecified forms of assault and harassment. *Id.* at ¶¶ 25-302.

III. Preacher's Discovery and Prior Motion Practice

Plaintiff has served the following written discovery upon the Defendants to which they responded:

| | |
|---|---|
| February 21, 2020 | Twenty-two (22) combined interrogatories and requests for production of documents (ECF No. 77) |
| February 21, 2020 | Fifty (50) requests for admissions (ECF No. 79) |
| March 2, 2020 | Eighteen (18) requests for admissions (ECF No. 80) |
| March 30, 2020 | Twenty (20) combined interrogatories and requests for production of documents (ECF No. 87) |
| April 3, 2020 | Five (5) requests for admission (ECF No. 89) |
| April 3, 2020 | Nine (9) combined interrogatories and requests for production of documents (ECF No. 90) |
| May 14, 2020 | Four (4) requests for production of documents (ECF No. 108) |
| May 18, 2020 | Eighty-four (84) combined interrogatories and requests for production of documents (ECF No. 110) |
| May 21, 2020 | Nineteen (19) requests for production of documents (ECF No. 112) |

| | |
|---|---|
| May 21, 2020 | Fifteen (15) combined interrogatories and requests for production of documents (ECF No. 113) |

Faced with successive rounds of discovery totaling 246 requests, many of which Defendants considered to be objectionable, Defendants filed motions requesting the entry of a protective order. ECF Nos. 114, 115. On June 3, 2020, the Court entered an Order granting Defendants' motions and stating in relevant part as follows:

> Having considered the claims asserted in the Complaint, the discovery requests served to date, and considerations of proportionality, the Court hereby limits Preacher to one final set of written discovery requests consisting of no more than 25 requests, including subparts, whether they take the form of interrogatories, requests for production or requests for admissions. If Preacher wishes to serve any requests beyond the final set authorized in this Order, he must file a motion with the Court requesting leave to do so and attach his proposed additional discovery requests to the motion. Leave to serve any additional discovery will be granted only upon Preacher's showing of good cause and substantial need.

ECF No. 117.

On June 28, 2020, Preacher served a further set of discovery requests directed to all Defendants. This discovery consisted of fifteen additional requests for production of documents and five additional interrogatories. ECF No. 137.

On July 8, 2020, Preacher filed a motion to compel discovery against all Defendants. Because of the lengthy and argumentative nature of the motion, the Court was unable to determine which of Defendants' responses Preacher was challenging as improper. Apparently, Preacher expected the Court to review each of his discovery requests and the Defendants' objections and responses thereto and determine whether each objection or response was appropriate. The Court declined to do so. *See Grabek v. Dickinson*, 2012 WL 113799, at *1 (E.D.Cal. Jan.13, 2012) (where the responding party objects to a discovery request, the party moving to compel bears the burden of

demonstrating why the objections are not justified); *Ellis v. Cambra*, 2008 WL 860523, at *4 (E.D.Cal. Mar. 27, 2008). A party moving to compel discovery must reasonably inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious. *Grabek*, 2012 WL 113799, at *1; *Womack v. Virga*, 2011 WL 6703958, at *3 (E.D.Cal. Dec.21, 2011). Preacher failed to do so. Accordingly, on September 28, 2020, the Court entered an Order denying Preacher's motion, but the Order was expressly without prejudice to Plaintiff's right to file a renewed motion identifying specifically which interrogatories, requests for production and/or requests for admissions and responses were the subject of the motion. ECF No. 172.

While his initial motion to compel discovery was pending, Preacher served additional discovery on the Defendants consisting of five interrogatories. ECF No. 148.

IV. Preacher's Renewed Motion to Compel

On October 15, 2020, Preacher filed a second Motion to Compel Discovery as well as a supporting brief and Declaration. *See* ECF Nos. 179-181. Although these submissions include significant recitations of Preacher's claims and argument regarding their merit, the Court has identified the following categories of discovery requests that appear to be the subject of Preacher's renewed motion.[2]

---

[2] The Court is addressing the disputed discovery responses categorically because any attempt to do so on a request by request basis would be impractical. The subjects of Preacher's discovery are scattered among hundreds of interrogatories, requests for production of documents, and requests for admissions, many of which are redundant or overlapping in subject matter.

5

A. Preacher's "Complete Psychological Records"

In his interrogatories to Defendants, Preacher requested his "complete psychological records for inspection." ECF No 77, ¶7. This request was followed by others of a similar nature including requests for:

- The psychological evaluations/assessments of Plaintiff conducted by Psychological Services Specialist Ms. Stacie Karp at SCI-Greene on or about January 23, 2017 for purposes of SMU (Special Management Unit) placement.

- The psychological evaluation/recommendation from SCI-Waymart's Special Assessment Unit Team (Dr. Difebo; Ms. Janes and Ms. Riggle) in relation to the SMU Program referral dated on or about June/May 12th, 2017 to June 9, 2017.

- The psychological evaluation of assessment conducted by PSS Weeden at SCI-Greene on or about January 25, 2019, for purposes of the STGMU referral conducted at SCI-Green.

- The psychological evaluation/assessment in relation to Plaintiff's placement on the Restricted Release List conducted by PSS Weeden on or about August 29, 2019 at SCI-Greene.

- The recommendations provide (sic) by the Special Assessment Unit Team at SCI-Waymart in relation to the S.M.U. referral submitted by SCI-Greene officials on or about 1-23-2017; S.A.U. Team recommendations on or about June 5, 2017.

Defendants have objected to these requests on the grounds that they seek "confidential, subjective mental health information pertaining to the assessment and treatment of Plaintiff" and that "[r]elease of this information to Plaintiff may pose a security risk to staff and/or the institution." Treating similar objections as assertions of privilege, courts in this circuit have

6

recognized their legitimacy. *See Mearin v. Folino*, 2012 WL 4378184, at *4 (W.D. Pa. Sept. 24, 2012); *Mercaldo v. Wetzel*, 2016 WL 5851958, at *6 (M.D. Pa. Oct. 6, 2016); *Spencer v. Collins*, 2013 WL 5176747, at *2 (M.D. Pa. Sept. 12, 2013); *Brown v. Martinez*, 2006 U.S. Dist. LEXIS 29772, at *6–9 (M.D. Pa. May 12, 2006); *Mincy v. Chmielewski*, 2006 U.S. Dist. LEXIS 77595, at *5–8, 2006 WL 3042968 (M.D. Pa. Oct. 25, 2006); *Griffin-El v. Beard*, 2009 WL 678700, at *8 (E.D. Pa. Mar. 16, 2009), *order corrected on reconsideration*, 2009 WL 1229599 (E.D. Pa. Apr. 30, 2009); *Whetstone v. Bohinski*, 2010 WL 785246, at *2–3 (M.D. Pa. Mar. 3, 2010), *modified on reconsideration*, 2010 WL 1505906 (M.D. Pa. Apr. 13, 2010). In *Mearin*, an inmate plaintiff sought mental health records to which the defendant objected on the grounds that the information was privileged, confidential, and sensitive. 2012 WL 4378184, at *4. The defendant asserted that "allowing an inmate to be privy to his mental health records could permit the inmate to manipulate his treatment and frustrate the goals of his treatment by interfering with a candid analysis of the inmate. Moreover, divulging an inmate's mental health records would subject any staff member involved in Plaintiff's treatment to retaliation." *Id.* There, the Court declined to order production of the records, in part persuaded by the defendant's reasoning, but also because the plaintiff's requests were overbroad and largely irrelevant to his claims. *Id.* at *5.

Similarly, in *Huertas v. Beard*, , 2012 WL 3096430 (W.D. Pa. Jul. 30, 2012), the Court declined to grant an inmate plaintiff's motion to compel production of psychological records because the plaintiff's complaints of decreased vision, eye pain, headaches and photophobia were not sufficiently relevant and "unpersuasive in light of the security concerns asserted by Defendants." 2012 WL 3096430 at *9. *See also Spencer*, 2013 WL 5176747, at *2 (inmate's motion to compel production of his psychiatric records denied because defendants' security concerns were "justified," and plaintiff was not challenging his mental health treatment).

The security concerns underlying such objections seem particularly weighty when the psychological records requested relate to officials' assessments of whether a prisoner presents a security or mental health risk requiring his placement in a special housing unit. At the same time, many courts confronting such objections have required *in camera* production and review of the requested records in order to scrutinize and weigh the relevance of the records against the security concerns raised by the defendants. *In camera* review is particularly appropriate where mental health records are relevant to the plaintiff's claim and a correctional defendants wholesale decline to produce those records on the basis of confidentiality or security. The Court adopted this approach in *Griffin-El v. Beard*. There, the Court followed the reasoning of both *Brown* and *Mincy* in order to come up with an arrangement where the Department of Corrections would produce a privilege log and supporting documentation to the Court, which would then then proceed to "[weigh] the asserted security concerns against the relevance of the documents to Plaintiff's claims" via *in camera* review. *Id.* at *8-9 (citing *Brown*, 2006 U.S. Dist. LEXIS 29772, at *6–9; *Mincy*, 2006 U.S. Dist. LEXIS 77595, at *5–8, 2006 WL 3042968. In *Brown*, the Court ordered in camera review of psychological records in dispute between an inmate plaintiff and defendants. 2006 U.S. Dist. LEXIS 29772, at *4. After that review, Chief Judge Vanaskie granted the defendants' motion for protective order, deeming the documents irrelevant to plaintiff's claims in relation to the defendants' documented security concerns. *Id.* at *9.

This balanced approach has historically been favored, even when privileged information is implicated. In *Kerr v. U.S. Dist. Court for Northern Dist. of California*, the Supreme Court considered whether a writ of mandamus was appropriate in a case where California state prisoners in a class action lawsuit requested documents that were asserted to be irrelevant, confidential, and privileged. 426 U.S. 394 (1976). After weighing the competing interests of all the parties, the Court noted that "*in camera* review is a highly appropriate and useful means of dealing with claims of governmental

privilege." *Id.* at 406. In addition, the United States Court of Appeals for the Third Circuit has stated "[t]he indiscriminate claim of privilege may in itself be sufficient reason to deny it." *United States v. O'Neill*, 619 F.2d 222, 227 (3d Cir. 1980). "If a valid claim of privilege is properly invoked, the party who seeks the information must show the need for it so that the Court can "balance on one hand the policies which give rise to the privilege and their applicability to the facts at hand against the need for the evidence sought to be obtained in the case at hand." *Id.* (citing *Riley v. City of Chester*, 612 F.2d 708 at 716 (3d Cir. 1979)).

In the present case, a question exists whether the records requested by Preacher are relevant to his claims. He apparently desires production of his psychiatric records in order to challenge his placement in the STGMU. However, STGMUs like the one maintained at SCI-Greene further the specific and legitimate penological interest of reducing the risk of violence presented by certain inmates. *Fraise v. Terhune*, 283 F.3d 506, 520–523 (3d Cir. 2002). An inmate's transfer to the STGMU does not violate his substantive due process rights. *Id.* Further, an inmate assigned to the STGMU has procedural remedies available to challenge that assignment. *Douglas v. McAnany*, 2012 WL 6763586, at *3 (W.D. Pa. Dec. 21, 2012), report and recommendation adopted sub nom. *Reid-Douglas v. McAnany*, 2013 WL 42377 (W.D. Pa. Jan. 3, 2013). It also appears that Preacher may desire these records because he wishes to challenge the adequacy of his psychiatric treatment under the Eighth Amendment, although this is far from clear from his pleadings and other submissions.

Notwithstanding these questions of relevance and the legitimacy of the security to concerns expressed by the Defendants, the Court finds that an approach like that followed by the courts in *Brown* and *Mincy* is appropriate in this case. The Defendants will be ordered to produce Preacher's psychological records and records regarding his placement in the STGMU for *in camera* review by the

Court to the extent such records are within their possession, custody or control.[3] However, the breath of Preacher's request for such records is excessive. The Defendants' production of these records is limited to the period December 28, 2016, the date of Preacher's transfer to SCI-Greene, through September 20, 2019, the date Preacher commenced this action. Upon receipt, the Court will review these records, weigh their potential relevance against the security and confidentiality concerns raised by Defendants, and determine to what extent, if any, they are subject to production to Preacher.

      B.   Documents Concerning Possible Mistreatment of Other Inmates

Preacher moves to compel responses to Requests Nos. 2, 3, and 4 of his Second Request for Production of Documents. Request No. 2 demanded production of "any and all statements made by Defendants in relation to any investigations, grievances or PREA reports for the use of force, sexual abuse. If statements are made in any other document, produce the documents." ECF No. 78. The DOC Defendants objected to this request as "vague, overbroad, and unduly burdensome," and specifically noted that "there are over twenty (20) DOC Defendants named in this lawsuit, from more than two (2) State Correctional Institutions, and some are retired from DOC employment." ECF No. 187-1. They also objected to the request as seeking irrelevant and personal and confidential information which may pertain to other inmates and/or staff. *Id.* The Court finds that Preacher's request is grossly overbroad, seeks irrelevant information, and is significantly disproportionate to the needs of the case. Preacher did not limit his request to any specific Defendant, to events or even to matters relating to himself. The Court will not rewrite his discovery request to make it reasonable in scope.

---

[3] The Court recognizes that although Preacher frequently directs his discovery to all Defendants, not all are able to produce what he wants.

Request No. 3 of Preacher's Second Request for Production sought "any and all disciplinary and personal complaints made against the Defendants, other than or by any other person besides the Plaintiff." Defendants objected to this request on various grounds, including that it was overly broad and sought documents that were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants objected to Request No. 4, which sought "prior civilian complaints against the Defendants for incidents of assault and battery, sexual abuse, negligence, and delayed medical care," on the same basis. *Id.* Defendants' objections to these requests are appropriate and well-taken. Prior misconduct of defendants may be discoverable where a pattern of similar misconduct is at issue. *See e.g., Rega v. Beard*, 2010 WL 1253531, at *9 (W.D. Pa. Mar. 24, 2010). This, however, is not such a case. *See Coit v. Garman*, 2018 WL 3818853, *3 (M.D. Pa. Aug. 10, 2018); *Lofton v. Wetzel*, 2015 WL 5761918, *2 (M.D. Pa. Sept. 9, 2015). Here, the breath and indiscriminate nature of Preacher's requests directed to essentially every Defendant, including the Medical Defendants, reveals it is a true "fishing expedition" on matters of no relevance to the issues in this case. Preacher has not alleged facts to support a *Monell* policy or custom claim or any other pattern of misconduct that would justify these requests. The Court also finds that the requests are not likely to lead to the discovery of admissible evidence and are substantially disproportionate to the needs of the case. Finally, to the extent similar requests were posed to the Medical Defendants, the suffer from the same defects and sought documents pertaining to other inmates that are protected by HIPAA privacy laws. Preacher's motion to compel production of these records will be DENIED.

C. Video Evidence

Preacher asserts that the Defendants are "intentionally suppressing" video of "incidents of extraordinary occurrences" in "violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.

2d 215 (1963). ECF No. 179, p.35. Preacher states that his first set of interrogatories and request for documents included a request that Defendants produce "video footage of H-Unit at 11 a.m. to 2 p.m." and that the DOC Defendants objected to this request on the grounds of relevance and responded that "security at SCI-Somerset has confirmed Plaintiff was not involved in any extraordinary occurrence on this date, therefore, no video footage was retained." *Id.*, p. 36. The DOC Defendants have adequately responded that they are not in possession, custody or control of video for the date, time and location specified by Preacher. In addition, Preacher has not offered an adequate explanation regarding what "extraordinary occurrence" occurred to allow the Court to overrule the DOC Defendants' relevancy objection.

Preacher also demands production of videos he believes were recorded on approximately nine other occasions. *See id.*; ECF No. 187-2, ¶¶ 8-11, 13-17, 21. As to each of these occasions, the DOC Defendants have asserted the same relevancy objection and explained that no video from these occasions has been preserved because Preacher was not involved in any extraordinary occurrences on those dates. Preacher may challenge the failure to preserve video for the dates in question, but for purposes of the pending motion to compel, the DOC Defendants have responded that they do not possess any such video. The Court cannot compel production of materials that do not exist or concerning which a defendant lacks possession, custody or control. Preacher's motion to compel production of videos will be DENIED.

D. Discovery Concerning the Standard of Care

In his seventh set of interrogatories, Preacher posed the following questions:

> 8. What is the Standard of Care owed to Prisoners?
>
> \*\*\*
>
> 10. What is the Policy or Custom utilized when delivering medical care to Prisoners?

> 11. If an injury such as a dislocated bone or fractured ligament is left untreated and/or without any assistive or supportive device, would that cause injuries to worsen?

Although the scope of discovery is broad under Rule 26(b), a party may not discover mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. *Runyan v. Sybase, Inc.*, 1993 WL 377062, *6 (E.D. Pa. Sept. 16, 1993) (citing Fed. R. Civ. P. 26(b)(3)). Furthermore, interrogatories may not call for conclusions of law, a party's conception of the law as applied to the particular facts or seek what legal principles on which a party will rely. *Id.* (citing 8 Charles A. Wright &Arthur A. Miller, Federal Practice and Procedure § 2167 (1970)). The interrogatories at issue call for purely legal conclusions on issues in this case. Preacher explicitly asks Dr. Kross to identify the "standard of care," as well as the "policy or custom" when delivering medical care to inmates. Preacher also asks whether leaving an injury untreated would cause that injury to worsen, which is simply another way of framing the central allegation that Preacher has levied against Dr. Kross. In addition to being overly broad, such interrogatories are the quintessential examples of improper interrogatories seeking legal conclusions. Accordingly, Preacher's motion to compel answers to these interrogatories will be DENIED.

ORDER

As set forth in the foregoing Memorandum Opinion, Plaintiff's Motion to Compel Discovery (ECF No. 179) is GRANTED in part and DENIED in part. The motion is GRANTED in that Defendants are ordered to produce to the Court only and for *in camera* review Plaintiff's psychological records and records regarding his placement in the STGMU for the period December 28, 2016 through September 20, 2019. Upon receipt, the Court will review these records, weigh their potential relevance against the security and confidentiality concerns raised by Defendants, and

determine to what extent, if any, they are subject to production to Plaintiff. In all other respects, Plaintiff's Motion to Compel is DENIED.

Entered this 30th day of November, 2020.

_____
RICHARD A. LANZILLO
United States Magistrate Judge